UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA ANN GOWAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY, Acting<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No.  1:23-cv-00598 DAD AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, the undersigned recommends that plaintiff's motion for summary judgment be denied and that the Commissioner's cross-motion for summary judgment be granted.

I.  PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on June 16, 2021.  Administrative Record ("AR") 267-75.[2]  Plaintiff alleged the disability onset date was January 1, 2011.  AR 267.

---

[1] SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

[2] The AR is electronically filed at ECF No. 12-1.

1

1  The applications were disapproved initially (AR 114), and on reconsideration (AR 134-35). On
2  October 19, 2022, ALJ Vincent A. Misenti presided over a hearing on plaintiff's challenge to the
3  disapprovals. AR 41-67 (transcript). Plaintiff was present and testified. AR 41. She was
4  represented by attorney Segthiene Bosavanh at the hearing. Id. David A. Rinehart, a vocational
5  expert, also testified. Id.

6  On November 25, 2022, the ALJ issued an unfavorable decision, finding plaintiff "not
7  disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).
8  AR 21-36 (decision). On March 1, 2023, the Appeals Council denied plaintiff's request for
9  review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.
10 AR 1-3 (decision).

11 Plaintiff filed this action in the Fresno Division of the Eastern District of California on
12 April 19, 2023. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties did not consent to the
13 jurisdiction of the magistrate judge and a District Judge was assigned. ECF No. 9. The case was
14 transferred to the Sacramento Division of the Eastern District of California on September 13,
15 2023 pursuant to a change in the Local Rules. ECF Nos. 16, 18. The parties' cross-motions for
16 summary judgment, based upon the Administrative Record filed by the Commissioner, have been
17 fully briefed. ECF Nos. 13 (plaintiff's summary judgment motion), 15 (Commissioner's
18 summary judgment motion), 17 (plaintiff's reply).

19                                II.  FACTUAL BACKGROUND
20 Plaintiff was born in 1964, and accordingly was 57 years old when she filed her
21 application. AR 267. Plaintiff has a high school education. AR 298. She alleged disability
22 based on general anxiety order, bipolar disorder, depression, high blood pressure, and thyroid
23 disease. AR 297.

24                                 III.  LEGAL STANDARDS
25 The Commissioner's decision that a claimant is not disabled will be upheld "if it is
26 supported by substantial evidence and if the Commissioner applied the correct legal standards."
27 Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the
28 Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

3

## IV.  RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a.  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since May 21, 2021, the application date (20 CFR 416.971 *et seq*.).
>
> 2. [Step 2] The claimant has the following severe impairments: bipolar disorder with anxiety and depression (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks using judgement limited to simple work related decisions.
>
> 5. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born [in] 1964 and was 57 years old, which is defined as an individual of advanced age, on the date the application was filed (20 CFR 416.963).
>
> 7. [Step 5, continued] The claimant has at least a high school education (20 CFR 416.964).
>
> 8. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since May 21, 2021, the date the application was filed (20 CFR 416.920(g)).

AR 27-36.  As noted, the ALJ concluded that plaintiff was "not disabled" under

Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 36.

VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) not providing clear and convincing reasons for discounting plaintiff's testimony regarding her mental dysfunction; (2) improperly evaluating the medical opinions of examining consultative psychologist Dr. Maussa Cottone-Wilson and State agency psychiatrists Dr. Karen Ying and Dr. M. Lin; and (3) substituting his own lay opinion for that of mental health experts.  ECF No. 13 at 13.

A.  <u>The ALJ Adequately Supported the Decision to Discount Plaintiff's Testimony</u>

The ALJ discounted, on credibility grounds, plaintiff's testimony regarding the intensity, persistence, and limiting effects of her mental dysfunction.  Evaluating the credibility of a plaintiff's subjective testimony is a two-step process: First the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged....  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  <u>Id.</u>  (internal citations omitted).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  <u>Id.</u>  (internal citations omitted).  While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability.  <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).  In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between his testimony and his conduct, claimant's daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59

(9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959.

Plaintiff testified that she was "depressed all the time" and had panic attacks "every minute of every day." AR 49, 55. Plaintiff further alleged that she was unable to socialize and spent most of her time in bed. AR 50, 55. Plaintiff stated that she takes Klonopin for her mental health symptoms but it "barely cuts" her anxiety. AR 48. She discontinued therapy when COVID began, and had not resumed because the last time she was supposed to talk to somebody, they didn't call. Id. Plaintiff stated that she was essentially bedridden two to three days a week due to her symptoms, though she did bathe daily. AR 58-49. When she went outside, Plaintiff either took the bus or got a ride from a friend. AR 51. Plaintiff stated she was unable to work because of severe anxiety, panic attacks, depression, and homicidal ideation. AR 30. Despite her impairments, she was able to cook dinner daily, vacuum, sweep, wash the dishes, and shop for groceries. AR 51.

The ALJ found that plaintiff's medical impairments "could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." AR 31. The ALJ gave at least two adequate reasons for discounting plaintiff's testimony. First, he found that plaintiff's symptoms were well controlled with medication. AR 34. The effectiveness of medication is relevant to the evaluation of a claimant's symptom testimony. 20 C.F.R. § 416.929(c)(3)(iv). An ALJ may reject a claimant's allegations based on "evidence suggesting that [the claimant] responded well to treatment" for the mental impairment(s) at issue. Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996). Here, the ALJ provided a detailed account of medication management and telehealth appointments which showed "that although the claimant endorsed periods of worsening psychiatric symptoms, they continued to be treated conservatively, with medication, to which the claimant repeatedly reported improvements in her symptoms." AR 31, 32, 34, 401, 418, 424, 455, 457. Waxing and waning of symptoms is a feature of bipolar disorder, Attmore v. Colvin, 827 F.3d 872, 878 (9th Cir. 2016), and while isolated incidents of improvement are not sufficient on their own to show

7

overall symptom reduction or effacy of medication, in this case the record reflects that the ALJ reasonably concluded that the broader trajectory reflected symptom improvement with medication. AR 34. See Attmore, 827 F.3d at 877 (stating an ALJ may not "pick out a few isolated instances of improvement," but he may choose examples indicative of a "broader development.").

As a secondary basis for discrediting plaintiff's subjective testimony, the ALJ cited instances in which the record undermined plaintiff's testimony. An ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony. 20 C.F.R. § 416.929(c)(4); see also Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). In this case, mental status examinations frequently revealed benign objective findings, including appropriate mood and affect; normal insight and judgment; and normal attention span and concentration. AR 403, 408, 413, 418, 435, 482, but see AR. 461-62 (showing normal behavior, speech, thought process, and thought content, but impaired concentration and memory and anxious mood and affect). Further, plaintiff consistently presented with cooperative, calm, and/or pleasant behavior. Id. Although plaintiff informed the agency that she was disabled in part due to homicidal ideations (AR 30, 324), she repeatedly denied any homicidal ideation to treatment providers (AR 403, 408, 413, 424, 438, 450, 452-53, 457, 460, 467, 478, 484, 488, 490), except on a single occasion when she reported that she "thinks she could even be homicidal" during an episode of intense anger and rage (AR 476). The ALJ reasonably considered this body of evidence as a whole when discounting plaintiff's allegations of debilitating mental symptoms. AR 31-32. For the reasons described above, the court finds that the ALJ did not err in discounting plaintiff's testimony because he provided specific, clear, and convincing reasons for doing so. Garrison, 759 F.3d at 1014.

B. The ALJ Did Not Commit Reversible Error in Assessing the Medical Opinions

Plaintiff asserts that the ALJ did not properly evaluate the medical opinion of examining physician Maussa Cottone-Wilson, Psy. D. (ECF No. 13 at 18-22) or the opinions of non-

8

examining agency physicians Karen Ying, M.D. and M. Lin, M.D. (ECF No. 13 at 14-18).  With respect to medical opinions, new regulations apply to claims filed on or after March 27, 2017, which change the framework for evaluation of medical opinion evidence.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness.  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b).

The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are defined in the regulations as follows:

> Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §404.1520c(c)(1)-(2).

////

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3). The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. Id. In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." Id. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

1. State agency psychiatrists, Karen Ying, M.D., and M. Lin, M.D.

In identical opinions, State agency psychological consultants Drs. Ying and Lin assessed moderate mental limitations in the areas of understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration, working in coordination with or proximity to others, the ability to complete a normal workday without interruptions from psychological symptoms and maintain pace, interacting appropriately with the general public, accepting instructions and responding appropriately to supervisors, getting along with coworkers and peers without exhibiting behavioral extremes, responding appropriately to changes in the work setting, traveling to unfamiliar places, and setting realistic goals or making independent plans. AR 108-11, 129-32. They opined that plaintiff could perform simple, routine tasks in a low-stress work setting with occasional decision making or workplace changes, no public contact and occasional coworker contact. AR 111, 132.

////

The ALJ rejected the opinions in part and accepted them in part. The ALJ stated, "in consideration of the claimant's reported anxiety and Dr. Cottone-Wilson's finding that the claimant was unable to complete serial threes, the undersigned modified the opinions of Drs. Ying and Lin that the claimant could work in a low stress work setting with occasional decision making or workplace changes to a limitation to using judgment limited to simple work related decisions due to the claimant's limitations within the 'paragraph B' criteria of concentration, persistence, or maintaining pace and incorporated such limitation to the residual functional capacity." AR 33. The ALJ went on to state he was "not persuaded by the opinions of Drs. Ying and Lin that the claimant could have no public contact with occasional coworker contact. These opinions are inconsistent with the overall record, which does not show that the claimant was observed by treatment providers with interaction difficulties (Exs. B2F-B6F). The social limitations are also inconsistent with the claimant's own testimony that she was able to travel by using a bus (Hearing Test.)." Id.

Plaintiff argues that the ALJ's limitation to simple, routine work did not adequately account for Drs. Ying's and Lin's restriction to low-stress work because "he did not explain *why* he modified these limitations, or *how* these modified work restrictions better reflected Plaintiff's limited ability in dealing with stress and dealing with workplace changes." ECF No. 13 at 16 (emphasis original). Defendant counters this position by arguing that the caselaw supports the conclusion that a restriction to simple, routine work encompasses a restriction to low-stress work. ECF No. 15 at 17. The court concurs, agreeing with other judges in this district that "a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in a residual functional capacity of simple, repetitive tasks." Henry v. Colvin, 2016 WL 164956, at *18, (E.D. Cal. Jan. 14, 2016); see also, Keller v. Colvin, 2014 WL 130493 at *3, 2014 U.S. Dist. LEXIS 4138 (E.D. Cal. Jan. 13, 2014) (finding the ALJ "appropriately captured" a physician's opinion that the plaintiff required "low stress settings" by limiting the plaintiff to simple tasks, "equating to unskilled work"), Messerli v. Berryhill, 2017 WL 3782986, at *11, 2017 U.S. Dist. LEXIS 141099 (E.D. Cal. Aug. 31, 2017) ("A claimant's low tolerance for stress in the workplace is encompassed in a residual functional capacity of simple, repetitive tasks.").

1  Accordingly, although the ALJ's use of the term "modified" is somewhat confusing, there is no
2  error in the RFC.  Even if there were error in the ALJ's failure to adequately explain, the error is
3  harmless because the RFC is unaltered.
4       Plaintiff also argues that the ALJ did not explain how a restriction to simple decision-
5  making (limiting the complexity of decisions) accommodated the State agency doctors'
6  assessment that plaintiff should be limited to occasional decision-making (limiting the frequency
7  of decisions), or as to why plaintiff would not require a restriction to occasional changes in a
8  workplace setting.  ECF No. 13 at 8, citing Bagby v. Comm'r of Soc. Sec., 606 Fed. Appx. 888,
9  890 (9th Cir. April 9, 2015) (finding that the ability to respond to usual work situations and
10  changes in routine was "distinct" from the limitations related to social interaction and the
11  complexity of job tasks).  The Commissioner counters that any error is harmless because the ALJ
12  adequately accounted for these restrictions by limiting plaintiff to work requiring only "repetitive
13  tasks," i.e., tasks that, by definition, involved few, if any, changes, and even if the ALJ erred by
14  not including an additional limitation to occasional decision making or occasional workplace
15  changes in the RFC, this error is harmless because the vocational expert testified that the
16  identified jobs required no more than occasional workplace changes.  ECF No. 15 at 17, citing
17  AR 64.  An ALJ's error is harmless where a limitation the ALJ erroneously omitted from the RFC
18  is incorporated into the jobs identified at step five.  Stubbs-Danielson v. Astrue, 539 F.3d 1169,
19  1174 (9th Cir. 2008).  The court agrees with the Commissioner that because the identified jobs
20  account for a limitation to occasional decision-making or workplace changes, plaintiff has not
21  identified a valid basis for reversal.
22       Finally, plaintiff argues that the ALJ erred in discounting the need for social work
23  restrictions (no public contact and occasional interaction with coworkers and supervisors).  The
24  court agrees with plaintiff that while the ALJ provided two rationales, both are tenuous at best.
25  First, the ALJ concluded that the social work restrictions were inconsistent with the "overall
26  record, which does not show that the claimant was observed by treatment providers with
27  interaction difficulties"  AR 33.  Even if the record was clear that plaintiff was able to interact
28  with treatment providers without difficulty, the ALJ does nothing to explain how plaintiff's

ability to interact normally with treatment providers translates into her ability to engage normally with the public in a workplace setting or undermines the assigned workplace social restrictions. The other rationale provided by the ALJ is the fact that plaintiff sometimes uses the bus to pick up her medications. AR 33. Here too, there is no obvious parallel. Plaintiff's ability to ride the bus (however frequently or infrequently) may require her to be in proximity to the public, but it does not clearly require the type of social interaction necessary for a workplace setting that requires public contact.

However, any error is harmless because even if the social restrictions were included by the ALJ, the jobs identified by the VE would still be available. For example, the ALJ found that plaintiff could perform the job of a garment sorter, with 55,600 in the national economy. AR 35; see Gutierrez v. Comm'r, Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014) (holding 25,000 jobs in the national economy was a significant number of jobs). In Aguirre v. Comm'r, Soc. Sec., 2017 WL 4697072, at *10, 2017 U.S. Dist. LEXIS 174681 (D. Or. Oct. 19, 2017), the District of Oregon held that any error by the ALJ in failing to include a limitation to no public contact in the RFC was harmless when the identified jobs, including the job of a garment sorter, did not require public contact. See also, Kennedy v. Colvin, 2015 WL 5693731, * 16, 2015 U.S. Dist. LEXIS 131776 (N.D. Cal. Sept. 29, 2015) (VE testified that where RFC included no public or employee contact, claimant could perform work as garment sorter). Because the alleged errors do not alter the disability outcome, they are harmless and do not require reversal. Stout, 454 F.3d at 1055.

    2.   Consultative Psychologist Dr. Maussa Cottone-Wilson

On September 24, 2021, plaintiff was evaluated by Maussa Cottone-Wilson, Psy.D. AR 459-464. Based on plaintiff's medical record and the examination, Dr. Cottone-Wilson opined that: (1) plaintiff had mild limitations in her ability to perform written and oral instructions, (2) she had mild to moderate limitations in maintaining regular attendance in the workplace, (3) she had moderate limitations in her ability to perform work activities on a consistent basis, (4) she had moderate limitations in her ability to perform work activities without special or additional supervision, (5) she had moderate limitations in her ability to complete a normal workday or workweek without interruptions from her psychiatric condition, (6) she had mild to moderate

limitations in her ability to interact with coworkers and the public, and (7) she had moderate limitations in her ability to deal with the usual stress encountered in a competitive work environment. AR 463.

The ALJ stated that this medical opinion was not persuasive because despite the fact that Dr. Cottone-Wilson conducted an examination, "many of the limitations are supported by a summary of the claimant's allegations, rather than specific findings (for example, Dr. Cottone-Wilson stated that the claimant was moderately limited in her ability to perform work activities on a consistent basis as evidenced by the claimant's 'reports' rather than examination findings) (Ex. B3F/6)." AR 33. The ALJ went on to conclude that Dr. Cottone-Wilson's opinion is inconsistent with the conservative, medication-based treatment plaintiff received, and that the opinion was of little probative value because it did not articulate plaintiff's maximum residual functional capacity. AR 33-34.

Plaintiff argues that the rationale provided by the ALJ is insufficient. However, as with evaluation of the State agency consultants, the errors identified by plaintiff regarding Dr. Cottone-Wilson's opinion are necessarily harmless because the ALJ identified available jobs that accommodate the assigned limitations. While the Commissioner addressed the issue of harmless error in its brief, plaintiff failed to address the issue or identify any harmful error in the reply. The court finds none. The ALJ identified jobs that do not require significant (if any) social interaction and therefore effectively incorporated Dr. Cottone-Wilson's opinion that plaintiff would have mild-to-moderate limitations in her ability to interact with the public. See DOT 222.687-014, available at 1991 WL 672131; DOT 381.687-034, available at 1991 WL 673262; DOT 920.687-018, available at 1991 WL 687916.

The jobs identified by the ALJ also adequately incorporate the other limitations that Dr. Cottone-Wilson assessed. In Stubbs-Danielson, the Ninth Circuit Court of Appeals held that the ALJ's RFC limitation to simple, routine work was consistent with credited moderate limitations in pace as well as various other mental limitations regarding attention, concentration, and adaption. 539 F.3d at 1173-74. Accordingly, the ALJ's limitation to simple, routine, repetitive work adequately accounted for the moderate limitations related to concentration, persistence, and

pace and adaption assessed by Dr. Cottone-Wilson. Notably, Drs. Ying and Lin assessed moderate limitations in similar areas of mental functioning, including plaintiff's ability to maintain attention and concentration, complete a normal workday without interruptions from psychiatric symptoms, and handle workplace changes (AR 108-11, 129-32); and they restricted plaintiff to simple work in a low stress work setting with occasional decision-making or workplace functioning. AR 108-11, 129-32. Just as the ALJ's RFC and identified jobs adequately accounted for these opinions, the ALJ's RFC and identified jobs similarly accounted for the opinion of Dr. Cottone-Wilson. See Stubbs-Danielson, 539 F.3d at 1174 (holding ALJ adequately incorporated a doctor's opinion into the RFC by translating the mental limitations "into the only concrete restrictions available to him"—another doctor's recommended restriction to simple tasks.). Because any error is harmless, plaintiff has not identified a basis for reversal.

### C. The ALJ Did Not Err in Issuing the RFC

As a final argument, plaintiff contends broadly that the ALJ improperly served as his own medical expert by rejecting all medical opinion testimony, and that the ALJ should have ordered a new consultative examination or consulted with a medical expert at the administrative hearing. ECF No. 13 at 22-24. The court disagrees. First, the ALJ did not reject the medical opinion testimony wholesale; in fact, he expressly adopted and incorporated portions of Drs. Ying and Lin's opinions. AR 33. Second, though plaintiff argues that "[i]n absence of a supporting medical source opinion, the ALJ lacked the expertise to interpret the raw clinical data and formulate work restrictions independently," (ECF No. 13 at 23), it is well established that "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see also Rounds v. Comm'r, Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (stating "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). There is no cause for remand here.

### VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMENDED that plaintiff's motion for summary judgment (ECF No. 13) be DENIED, that the Commissioner's cross-motion for

summary judgment (ECF No. 15) be GRANTED, and that judgment be entered in favor of the Commissioner and the case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: May 3, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE